**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

DAVID KENT,  CASE NO. 16-12053

    *Plaintiff*,  DISTRICT JUDGE THOMAS LUDINGTON
                               MAGISTRATE JUDGE PATRICIA MORRIS

*v*.

WORLD WIDE FINANCIAL SERVICES, INC.,
POTESTIVO & ASSOCIATES, P.C.,
CITIMORTGAGE, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
PROF-2014-S2 LEGAL TITLE TRUST,
and U.S. BANK,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTIONS TO DISMISS (Docs. 6, 8) and TO STRIKE
PLAINTIFF'S NOTICE OF AUTOMATIC STAY (Doc. 21)**

**I.      RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss, (Docs. 6, 8) be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1, Ex. A, Pl.'s Compl.), be **DISMISSED**. It is further recommended that Defendant's motion to strike (Doc. 21) be **DENIED** as **MOOT**.

**II.     REPORT**

    **A.      Introduction**

On April 28, 2016, Plaintiff filed the subject complaint *pro se* in state court, asserting a variety of foreclosure-related claims against Defendants World Wide

1

Financial Services, Inc. ("World Wide"), Potestivo & Associates, P.C. ("Potestivo"), CitiMortgage, Inc. ("Citi"), Mortgage Electronic Registration Systems, Inc. ("MERS"), U.S. Bank, and PROF-2014-S2 LEGAL TITLE TRUST ("the Trust"). (Doc. 1, Ex. A, Pl.'s Compl.).  Citi properly removed this case to federal court on June 7, 2016. (Doc. 1). On June 14, 2016, Citi and MERS filed a Motion to Dismiss, (Doc. 6), and U.S. Bank, the Trust, and Potestivo filed a separate Motion to Dismiss, (Doc. 8). The same day, District Judge Ludington referred all pretrial matters to the undersigned Magistrate Judge. (Doc. 7). Plaintiff filed a Response to these motions on September 16, 2016, to which Citi filed a Reply on September 29, 2016.

As noted by Citi in its petition for removal, Defendant Worldwide Financial Services, Inc. and its related entities filed a Chapter 11 bankruptcy petition in the Eastern District of Michigan, Case No. 05-75180, the petition was converted to a Chapter 7 liquidation, and a trustee was appointed to liquidate the assets. (Doc. 1 at ID 3.) Notice of automatic stay was also filed on November 23, 2016. (Doc. 20.) Therefore, Citi did not seek concurrence from Worldwide and it is no longer a real party in interest in this action. Citi has also filed a motion to strike Plaintiff's notice of automatic stay on January 11, 2017. (Doc. 21.)

Although Plaintiff filed a Notice of Bankruptcy Automatic Stay on November 23, 2016, such notice does not operate to delay the present decision because this case does not qualify as a "proceeding involving . . . pre-petition debts" or an "action to obtain possession of the property of the estate, or to enforce [a] lien against any property of the estate, . . ." (Doc. 20); *see* 11 U.S.C. § 362(a)(1) ("[A] petition filed under . . . this title, . .

. operates as a stay, applicable to all entities, of" "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against* the debtor that was or could have been commenced before the commencement of the case . . . ." (emphasis added)). Therefore, the instant motions are ready for report and recommendation.

### B. Background

On March 12, 2004, Plaintiff entered into a mortgage agreement with World Wide on the property located at 572 West Shore View Lane, Indian River, Michigan 49749. (Doc. 1, Ex. A, Pl.'s Compl. at para. 8). MERS was listed as the mortgagee. (Doc. 8-3 at ID 132). In January 2015, Plaintiff fell behind on the mortgage payments and began loan modification negotiations with "Defendants [sic] agents." (*Id.* at para. 9). On April 7, 2015, World Wide, via its nominee, MERS, allegedly "drafted and publically filed [a] sworn affidavit styled as an Assignment of Plaintiff's original mortgage" to Citi. (*Id.* at para. 10). At this time, World Wide "was dissolved pursuant to Michigan law." (*Id.* at para. 20).

Thereafter, on August 4, 2015, Citi assigned and recorded the mortgage to U.S. Bank (acting as a trustee for the Trust) and the Trust. (*Id.* at para. 11). This second assignment allegedly occurred in violation of "trust guidelines," the "laws of the federal government regulating securitized trusts," and the "operational documents of the Trust," which prevented "receiv[ing] any mortgage loans that were in default." (*Id.* at para. 12). U.S. Bank and the Trust initiated proceedings to foreclose the mortgage by advertisement

on March 29, 2016, and a sheriff's deed was issued on April 29, 2016. (Doc. 6-3 at ID 79-81).

  **C.** **Motion To Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys.*

5

*Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### D. Analysis

Plaintiff's Complaint contains five distinct counts: Count One (wrongful foreclosure); Count Two (negligence); Count Three (fraud); Count Four (breach of contract); and Count VIII (the Fair Debt Collection Practices Act ("FDCPA")). Defendant Citi argues that Plaintiff's Complaint must be dismissed because Plaintiff lacks standing to challenge the mortgage assignments, that his negligence claim is barred by the economic loss doctrine, and that the fraud claim should be dismissed because it is inadequately pled. (Doc. 6.) Defendants Potestivo and U.S. Bank as Trustee for the Legal Title Trust contend that Plaintiff's Complaint should be dismissed because Plaintiff lacks standing to challenge the assignments of mortgage, Plaintiff's breach of contract claim should be dismissed because requisite notice was provided by Defendants, and that Plaintiff's claims for violation of the FDCPA and MCPA should be dismissed as to U.S. Bank, as Trustee, because it is the owner of the indebtedness and not a debt collector. (Doc. 8.) I will address these arguments relative to each of the claims presented in the Complaint in turn.

### 1. Count One: Wrongful Foreclosure

Plaintiff's prime argument is that "Defendants, individually and jointly, breached and/or disregarded their duties to investigate the ownership of and facts and circumstances required to properly and legally file[] an appropriate Foreclosure by Advertisement under Chapter 32 of the Revised Judicature Act of 1961 as amended, against the Plaintiff . . . and the property located at 572 W. Shore View Lane, Indian River, Michigan 49740" because the assignments were improper (as World Wide Financial Services was dissolved at the time of the original assignment), and thus U.S. Bank "did not own either the note or the mortgage on the subject property" and could not have legally proceeded with a non-judicial foreclosure. (Doc. 1, Ex. A, Pl.'s Compl. at paras. 19-20). In addition, Plaintiff contends that the Trust's "operational documents" precluded U.S. Bank from placing "mortgage loans that were in default" therein. (*Id.* at paras. 12-13).

In *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010), the Sixth Circuit faced an analogous factual situation. The plaintiff in *Livonia* challenged the foreclosure on the grounds that the mortgage assignments were legally invalid because they "were never recorded," and because a defendant trust was not in existence when the property was transferred into its possession, making the record chain of title "defective." *Id.* at 100, 102. The Court, however, found that "even if there were a flaw in the assignment, [the plaintiff] d[id] not have standing to raise that flaw . . . [because] 'a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Id.* at 102. The narrow safe harbor from this rule—that an

7

"obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void" such as "nonassignability of the instrument, assignee's lack of title, [or] a prior revocation of the assignment," *id.* (quoting 6A C.J.S. *Assignments* § 132 (2010)) (internal quotation marks omitted)—would require allegations that the plaintiff "may be subject to a threat of double liability" on the debt. *Etts. v. Deutsche Bank Nat. Trust Co.*, 2014 WL 645358, at *6 (E.D. Mich. Feb. 19, 2014); *see Livonia*, 399 F. App'x at 102 ("Without a genuine claim that [a foreclosing defendant] is not the rightful owner of the loan and that [a plaintiff] might therefore be subject to double liability on its debt, [plaintiff] cannot credibly claim to have standing to challenge the [assignment]."). Of note, such allegation must surpass "pure speculation." *Dye v. Wells Fargo Home Mortg.*, No. 13-cv-14854, 2014 WL 1908285, at *5 (E.D. Mich. May 13, 2014).

 As an initial matter, Plaintiff's central argument that MERS's original assignment to Citi was improper because World Wide had dissolved, (Doc. 1, Ex. A, Pl.'s Compl. at para. 20), must fail. "[T]he Sixth Circuit has been clear that insolvency does not divest MERS' authority to act as a nominee." *Wilcoxson v. Brothers*, No. 15-13308, 2016 WL 4119802, at *1 (E.D. Mich. Aug. 3, 2016) (citing *Spadafore v. Aurora Loan Servs. LLC*, 564 F. App'x 168, 172 (6th Cir. 2014)); *accord Lewis v. Bank of New York Mellon Trust Company, N.A.*, 2016 WL 4555969, at *5 (D. Mass. Aug. 31, 2016) ("PMC's dissolution in 2008 did not preclude MERS from assigning the mortgage to BNYM in 2014."). Plaintiff plainly consented to this arrangement in the mortgage agreement. *See generally* (Doc. 8-3 at ID 132) ("MERS is a separate corporation that is acting solely as a nominee

8

for Lender [World Wide] *and Lender's successors and assigns*. MERS is the mortgagee under this Security Instrument." (emphasis added)); (*Id.* at ID 139) ("The covenants and agreements of this Security Instrument shall bind . . . and benefit *the successors and assigns of Lender*." (emphasis added)). Yet throughout his complaint, Plaintiff reiterates the assertion that this and other allegedly improper assignments deprived U.S. Bank and the Trust of standing to foreclose on the mortgage. He asserts, for instance, that the "improper assignment" to U.S. Bank "void[ed]" the transfer, that consequently U.S. Bank "was prohibited from accepting the mortgage at the time of the assignment," and further that "the trust ha[d] no standing [to foreclose] . . . because the note/security interest failed to be assigned to the trust []properly." (Doc. 1, Ex. A, Pl.'s Compl. at para. 39). But he does not, and cannot, assert that there was no record chain of title to evidence the allegedly fraudulent assignments. *See* M.C.L. § 600.3204(3). Indeed, Plaintiff's argument seeks to carve an impossible path forward. As other courts in this circuit recognize, "the law is clear that Plaintiff has no standing, in a foreclosure proceeding or otherwise, to challenge the underlying validity of the Assignment of the Mortgage from MERS to [Citi]," or from Citi to U.S. Bank and the Trust, for that matter. *Dye*, 2014 WL 1908285, at *4.[1]

---

[1] Plaintiff's Reply brief seeks to argue that the challenged assignments may be fraudulent conveyances under M.C.L. §§ 565.371, 566.221, and 566.226. (Doc. 18 at ID 194). This claim is is unpersuasive. Not only does Plaintiff's complaint fail to mention to what end such fraudulent conveyance would be directed, as is discussed in greater detail below, but the notion that MERS's patently lawful actions on behalf of World Wide—and Citi's subsequent transfer to U.S. Bank and the Trust—were designed to "defraud" Plaintiff "of [his] lawfuil suits, damages, forfeitures, debts, or demands"—in the same manner as, say, a debtor pawning off her assets to avoid fulfilling creditors' demands—seems farfetched, particularly when juxtaposed with case law that sanctions Defendants' conduct. (*Id.*).

To evade this result, Plaintiff argues in response that the "factual basis underlying the holding in the *Livonia* case has no similarities and therefore no application" here, because unlike the foreclosing party in *Livonia*, the "foreclosing party here did not have clear title to both the note and the mortgage." (Doc. 18 at ID 192). Because there "are no proofs revealing that the trust [U.S. Bank] allegedly represents[] properly came into ownership of [the] mortgage note," the facts here, he posits, are materially distinguishable. (*Id.*).

This riposte, however, falls flat. A foreclosing party need not possess the note under Michigan law, and the Sixth Circuit has discarded identical arguments countless times. *Accord, e.g.*, *Rush v. Mac*, 792 F.3d 600, 604 (6th Cir. 2015) ("Plaintiffs contend [that Bank of America] . . . lacked standing to foreclose . . . because Bank of America was not the owner of record of any interest secured by the mortgage. . . .Plaintiffs' argument is without merit. . . . In the mortgage they signed, plaintiffs granted MERS the power to assign the mortgage to Bank of America. That assignment was recorded, creating a clear record chain of title. The mortgage also gave MERS, as mortgagee, the power to initiate foreclosure proceedings, and once assigned, Bank of America, as record holder of the mortgage, also had the power to foreclose under the mortgage. . . . The statute requires only a record chain of title for the mortgage, not the underlying debt or note."). Nor does Plaintiff futilely attempt to dispute the existence of a record chain of title—he simply argues, without authority, that the assignments were void. Unfortunately for Plaintiff, not only are the assignments' validity invulnerable to Plaintiff's challenge (as discussed above) but as *Livonia* makes clear, "[e]ven if the transfer were invalidated,

10

the public record would remain as it is, and the record chain of title would not be disturbed." *Livonia*, 399 F. App'x at 102.[2]

For these reasons, Plaintiff's claim of wrongful foreclosure should be dismissed.

### 2. Count Two: Negligence

Plaintiff contends that "Defendants, by their actions and omissions, violated their duty to the public in general, and to this Plaintiff in particular; each and every act of negligence and/or gross negligence by the Defendants, being the proximate cause of Plaintiff's damage and injury to his property rights in the subject property." (Doc. 1, Ex. A, Pl. Compl. at para. 23). Further, he suggests that he "sustained serious and permanent injuries to his statutory and common law rights of property ownership, and to not be deprived of liberty or property, without due process of law, and because he has improperly lost legal title to the his [sic] property . . . [as well as] his time spent on, his investment costs in, maintenance costs for, and equity built in the subject property."

These allegations fail to state a claim for relief for two prime reasons: First, they are overly formulaic and conclusory, and thus cannot satiate the demands of Federal Rule of Civil Procedure 8. In addition, they fail to circumvent the economic loss doctrine.

To state a claim for negligence under Michigan law, a Plaintiff must demonstrate: (1) "a duty owed to the plaintiff by the defendant"; (2) "breach of that duty"; (3) "causation"; and (4) "damages." *Coyer v. HSBC Mortg. Services, Inc.*, 701 F.3d 1104,

---

[2] I would briefly like to emphasize that Plaintiff's persistent insistence that defendants' affidavits contained false information remains conclusory; he has supplied the Court with no factual support for these statements, and I need not accept them as true. *Accord Chambers v. HSBC Bank USA NA*, 2014 WL 1405276, at *7 (E.D. Mich. Apr. 11, 2014) (finding a plaintiff's "conspiracy allegation" involving foreclosure via falsified affidavits to be "conclusory and contain[ing] no factual support" to withstand a motion to dismiss).

1108 (6th Cir. 2012) (quoting *Brown v. United States*, 583 F.3d 916, 920 (6th Cir. 2009)) (internal quotation marks omitted). Although "violations of regulations may provide evidence of negligence," a plaintiff must nevertheless direct the court to such regulations and "establish that [they] imposed a duty on the lender that was owed to the borrower." *McKerracher v. Green Tree Servicing, LLC*, No. 1:15-cv-235, 2015 WL 9942621, at *7 (W.D. Mich. Dec. 17, 2015). In this particular way, Plaintiff's allegations are woefully inadequate. He also fails to explain exactly how any Defendant breached a duty, leaving the Court to speculate on his behalf. And he does not properly plead causation and damages either: his complaint states only that the foreclosure sale was set for April 29, 2016 (a day after the filing of his complaint) but does not allege that the sale occurred, or if it did whether he redeemed the property before the expiry of the statutory redemption period. Although he had ample time to amend his complaint—or request an amendment—and include such charges since its filing, he has declined to do so. *Cf. Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 568 (6th Cir. 2015) ("Assuming arguendo that [Plaintiff] makes a sufficient claim of fraud and even prejudice, she nonetheless fails to state a claim upon which relief may be granted because she did not act within the redemption period."). In short, Plaintiff's negligence count merely boasts "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 667 (citing *Twombly*, 550 U.S. at 555).

The economic loss doctrine also precludes Plaintiff's negligence claim. *See, e.g.*, *Kemp v. Resurgent Capital Services*, No. 13-11794, 2013 WL 5707797, at *9 (E.D. Mich. Oct. 21, 2013) ("Under Michigan law, a party is barred from recovering economic

12

losses in tort, where the losses were suffered because of a breach of duty assumed only by contract."). When parties have a contract in Michigan, a tort claim does not arise unless the duty breached exists "independent from the contractual obligations of the breaching party." *McKerracher*, 2015 WL 9942621, at *6. Plaintiff makes no allegation that some duty independent of the mortgage contract was breached by a defendant. In cloaking his breach of contract claim as negligence, Plaintiff deprived it of legal weight.

For these reasons, Plaintiff's negligence claim should be dismissed as to all defendants.

### 3. Count Three: Fraud[3]

Plaintiff suggests that "Defendants have falsely represented to Plaintiff and the public that they physically hold a properly endorsed mortgage note and/or are holders in due course of Plaintiff's Promissory note and Mortgage, that they are the real parties in interest entitled to enforce the Promissory note, and that they have legal standing to pursue a foreclosure by advertisement remedy against Plaintiff." (Doc. 1, Ex. A, Pl.'s Compl. at para. 27). He also alleges that "Defendants knew, or should have known, that the representations were false" and "intended to induce Plaintiffs [sic] to forebear from asserting his legal rights to challenge foreclosure." (*Id.* at para. 28). Thereafter, Plaintiff

---

[3] Plaintiff labels this count as "Fraud & Conversion," but fails to allege any facts relating to personal property, as required for a conversion claim under Michigan law. *E.g.*, *O'Brien v. BAC Home Loan Servicing, LP*, No. 10-15136, 2011 WL 1193659, at *5 (E.D. Mich. Mar. 28, 2011) ("'In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property . . . .' Plaintiff has not alleged the BAC has exerted dominion and control over any of plaintiff's personal property. Rather, plaintiff alleges that there were 'attempts to convert property or title.' This conclusory allegation is wholly insufficient to support a conversion claim." (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 390 (1992)) (internal citation omitted)). For this reason, I construe the count as seeking to allege only fraud.

"believed and relied on the publications and sworn filings of Defendants to his detriment . . . as the fraud of Defendants covered the truth about the legal and proper transfers as allowed by Michigan law and statute and the identity of the alleged foreclosing party." (*Id.* at para. 29). "Defendants Potestivo and U.S. Bank's advertising and proceeding with an action in foreclosure is an assertion that Defendants complied with MCL 600.3204. This is a factual and legal impossibility." (*Id.* at para. 32). He then states that a series of "fraudulent" dealings, affidavits, advertisements, and other "badges of fraud" pervaded the foreclosure process. (*Id.* at paras. 35-41).

Stating a claim for fraud under Michigan law requires establishing that: (1) "the defendant made a material misrepresentation"; (2) "the representation was false"; (3) "when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without any knowledge of its truth as a positive assertion"; (4) "the defendant made the representation with the intention that the plaintiff would act upon it"; (5) "the plaintiff acted in reliance upon it"; and (6) "the plaintiff suffered damage." *Coyer*, 701 F.3d at 1108 (quoting *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100-01 (6th Cir. 2010)) (internal quotation marks omitted). As Citi and MERS note, the Sixth Circuit requires a plaintiff to "specify the [fraudulent] statements," "identify the speaker[s]," "state where and when the statements were made," and "explain why the statements were fraudulent"—*Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (citations omitted)—as well as state with *particularity* the "time, place, and content of the alleged misrepresentation on which he or she relied[,] . . . the fraudulent intent of the defendants,

14

and the injury resulting" therefrom. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks omitted); *see* Fed. R. Civ. P. 9(b).

Applying these standards, Plaintiff's claim deficiently asserts fraud. In general, he does not provide any clear facts as to the content of the statements made, when they were made, or who made them, other than that they were allegedly "fraudulent" and appeared in the context of advertisements, assignments, or assertions. He also does not indicate how he relied on them, or to what end any particular defendant sought to mislead him. *Accord Boykin v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 3029862, at *5 (E.D. Mich. July 6, 2012) ("[Plaintiff] fails to allege, . . . who made fraudulent statements or omissions, what those statements were, when they were made, or how he relied on them to his detriment. Plaintiff's conclusory allegation of fraud is insufficient to state a claim."). The most specific "assertion[s]" Plaintiff identifies are "Potestivo and U.S. Bank's" *actions* of "advertising and proceeding with an action in foreclosure . . . ." (Doc. 1, Ex. A, Pl.'s Compl. at para 32); *cf.* Black's Law Dictionary (10th ed. 2014) (defining "statement" as "A verbal assertion or nonverbal conduct intended as an assertion"; defining "false statement" as "An untrue statement knowingly made with the intent to mislead"). Even assuming, in the spirit of abundant caution, that such allegations illustrated "statements" or "assertions" as required—which is to construe the term "statement" with astounding breadth—they fail to illustrate sufficient falsity or illegality for the reasons stated, *supra*, in discussing the deficiency of Plaintiff's wrongful foreclosure claim.

### 4. Count Four: Breach of Contract

Plaintiff says that he neither received notice of acceleration and foreclosure, nor notice of default and an opportunity to cure the default. (Doc. 1, Ex. A, Pl.'s Compl. at paras. 42-53). U.S. Bank, Potestivo, and the Trust, however, attach this evidence to their Motion to Dismiss, contradicting Plaintiff's allegations directly and persuasively. *See generally* (Docs. 8-4, 8-5, 8-6). The affidavits included in these filings constitute presumptive evidence that these Defendants complied with the relevant statutory notice requirements. *See* M.C.L. § 600.3264. Moreover, although not included in Plaintiff's complaint, documents "not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings . . . when the 'document is referred to in the complaint and is central to the plaintiff's claim.'" *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James W.M. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)). Both requirements are easily met here, and as such, Plaintiff's breach of contract claim should be dismissed. *Accord, e.g.*, *Snell v. Wells Fargo Bank*, No. 11-CV-12018, 2012 WL 1048576, at *2 (E.D. Mich. Mar. 28, 2012) ("Defendants have attached to their motion to dismiss documentary evidence of the mortgage, the assignment of mortgage, the notices of foreclosure, the sheriff's deed, the affidavit of MCL 600.3205 notice, and the affidavit of the purchaser. These exhibits and the information contained therein are referenced in Plaintiff's Complaint and are central to Plaintiff's claims. As such, they may be deemed to form part of the original complaint and should be considered in deciding Defendants' motion. Thus, conversion to a Rule 56 motion is not required." (internal citation omitted)).

### 5. Count VIII: The FDCPA

Plaintiff includes a claim under the FDCPA, alleging that "Defendants [sic] does not have a present right to possession of the property claimed as collateral through an enforceable security interest since . . . neither [U.S. Bank] nor [the Trust] has standing and have no beneficial interest in the security interest because the note/security interest failed to be properly assigned to the trust." (Doc. 1, Ex. A, Pl.'s Compl. at para. 56). He cites violation of 15 U.S.C. § 1692f(6)—which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" "there is no present right to possession of the property claimed as collateral through an enforceable security interest"—as well as 15 U.S.C. 1692e(5)—which prescribes a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." (Doc. 1, Ex. A, Pl.'s Compl. at para. 57).

As noted by Defendant U.S. Bank as Trustee, and as assignee, is the owner of the indebtedness. As such, it is not a debt collector under 15 U.S.C. §1692a(6). Therefore, Plaintiff's FDCPA claim should be dismissed.

### E. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss, (Docs. 6, 8) be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1, Ex. A, Pl.'s Compl.), be **DISMISSED**. It is further recommended that Defendant's motion to strike Plaintiff's Notice of Automatic Stay be **DENIED** as **MOOT**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Date: January 12, 2017                                    S/ PATRICIA T. MORRIS
                                                           Patricia T. Morris
                                                           United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: January 12, 2017                                    By s/Kristen Castaneda
                                                           Case Manager

18